# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-324


**DIRECT TECH DRILLING, LLC**

**VERSUS**

**DANRIK CONSTRUCTION, INC., ET AL**

**\*\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2015-1335
HONORABLE SHARON DARVILLE WILSON, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\*\***
## SYLVIA R. COOKS
## JUDGE
**\*\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks and Shannon J. Gremillion, Judges.

### AFFIRMED IN PART, AS AMENDED; REVERSED IN PART; AND RENDERED.

**Teresa D. Cop**
**Kaster & Cop, LLC**
**P.O. Box 815**
**Zachary, LA 70791**
**(225) 658-5450**
**COUNSEL FOR PLAINTIFF/APPELLEE**
    **Direct Tech Drilling, LLC**

**Richard Mary**
**Richard Mary and Associates**
**10641 Pecue Lane**
**Baton Rouge, LA 70810**
**(225) 926-1451**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Danrik Construction, Inc.**

**COOKS, Judge.**

Danrik Construction, Inc. entered into an agreement with Bellsouth in December of 2012 to install approximately 27,000 feet of cable. This endeavor involved laying cable and innerduct underneath the Calcasieu River, which necessitated boring under the river to lay a polyvinyl pipe through which the cable and innerduct would be fitted.

After one unsuccessful attempt with a different subcontractor, Danrik subcontracted with Direct Tech Drilling, LLC, to install pipe for the purpose of running communications cable across the Calcasieu River. The original quote for the job was $23,000.00. However, after beginning the project, Direct Tech determined it would have to use a more expensive process to complete the job. Thus, the parties agreed that Direct Tech was to receive $46,000.00 as the contract price. These facts were undisputed.

Direct Tech eventually bored and placed a pipe under the Calcasieu River. This process occurred on August 22 and 23, 2014. The pipe installed was not purchased by Direct Tech, but was provided to them by Danrik. Direct Tech did not "proof" the pipe to determine if the pipe was open and could be used to run cable under the river.[1] Danrik eventually determined that cable could not be pulled through the pipe; thus, the pipe, after installation, was unusable for its intended purpose.

Danrik attempted to resolve the matter themselves, trying to blow air and water through the pipe to clear any possible obstruction. These attempts were unsuccessful. They also attempted to drill another bore on two occasions. During these attempts, Danrik also contacted K-Jon Sewer and Septic to clear the pipe. Using a waterjet and ordering hose to insert into the pipe, K-Jon was partially able to clear the pipe. However, testimony established the diameter within the cleared

---

[1] "Proofing" the pipe is done by blowing a mandrel from one end of the pipe to the other to determine if it is clear and free from obstructions.

2

portion of the pipe was only sufficient to get the cable through, but would not fit the innerduct.

Danrik acknowledged despite the fact the pipe would only be able to accommodate the cable and not the innerduct, it was paid in full by Bellsouth. Rick Judice, one of the owners of Danrik, testified they likely "were going to get caught with that one day." Because of the fact the pipe was not usable after Direct Tech finished laying it, Danrik refused to pay the invoice it received from Direct Tech. In response, Direct Tech proceeded to file a Materialman's Lien against Danrik and notice letters were sent to all parties, putting them on notice of Direct Tech's claim.

After suit was filed by Direct Tech, Danrik filed a reconventional demand claiming it had incurred expenses in order to make the pipe usable. Direct Tech claimed this was the first time it was given notice or had knowledge of such a claim by Danrik.

The matter came to trial on June 27, 2016. After trial, judgment was rendered in favor of Direct Tech and against Danrik in the amount of $46,000.00, the full amount of the contract. In its oral reasons for judgment, the trial court focused on the fact that the pipe eventually was able to be used by Danrik and that Danrik was paid in full by Bellsouth. The trial court stated, because there was no specific provision in the contract requiring Direct Tech to proof the pipe, Danrik "can't hold them responsible for something the parties never agreed to, that there never was a meeting of the minds." Attorney fees were also awarded to Direct Tech in the amount of $6,500.00 and $350.00 was awarded for the cost of filing suit and recording the lien. The trial court denied Direct Tech's request for penalties, finding Danrik had "genuine concerns, and they thought that was a valid defense to paying," thus their actions were not malicious. The trial court denied

3

Danrik's reconventional demand against Direct Tech. A motion for new trial was filed by Danrik and denied.

This appeal followed, wherein Danrik asserts the following issues with the trial courts judgment:

1. Was Direct Tech's lien timely filed?

2. Did the trial court err when it determined that Direct Tech had fulfilled its contract?

3. Assuming that Direct Tech substantially performed its obligations under the contract, which is denied, did the trial court err when it failed to allow Danrik credit for the cost of completing the contract?

Direct Tech answered the appeal and requested this court raise the amount of attorney fees awarded by the trial court.

**ANALYSIS**

The facts are undisputed that Danrik entered into a contract with Bellsouth to install fiber optic cable and innerduct under the Calcasieu River. Danrik then subcontracted a portion of the work to Direct Tech, whose job it was to bore a polyvinyl pipe underneath the river to house the cable and innerduct. Testimony established Direct Tech was aware of the intended use of the polyvinyl pipe.

Direct Tech completed its boring of the pipe. Several days after completion of its work, Danrik determined the pipe was not usable as it was blocked for some undetermined reason. Therefore, Danrik could not place the fiber optic cable through the pipe as required by the contract with Bellsouth. Danrik was then forced, at its expense, to bring in another subcontractor to open the pipe enough to run the fiber optic cable through. All testimony established the pipe would not have sufficient diameter to later install the innerduct. Danrik was paid in full by Bellsouth as set forth in the contract between those two parties.

Much ado was made about the issue of "proofing" the pipe and whether it was provided for in the contract. We find this issue irrelevant in resolving the

4

ultimate issue presented in this case. A construction contract at the very least contains an implied understanding between the parties that the thing so constructed can be used for its intended purpose unless expressly stated otherwise. As an example, Danrik notes if a party were to contract for the installation of a water line, it would be implicit in any such installation that the line be capable of carrying water, and there would be no compliance with the contract if the line was not capable of carrying water. The same situation, Danrik insists, applies here. Fitness for the purpose intended requires that the pipe installed by Direct Tech must be capable of housing cable. While the contract may well have been silent as to the necessity or any obligation to "proof" the pipe, there still remained the implicit obligation on Direct Tech's part to provide a pipe fit for its intended use.

The testimony established Direct Tech was aware that the intended purpose of the pipe, which it had been contracted to bore under the river, was the housing of fiber optic cable and innerduct. Direct Tech acknowledged in its brief that "Austin Gautreaux was informed Danrik would be installing fiber and innerduct." When the pipe was found to be incapable of accommodating the fiber optic cable and innerduct, it was not fit for its intended purpose. The pipe did not become partially fit for its intended purpose until Danrik brought in K-Jon to blow open the pipe sufficiently to accommodate the cable.

Under Louisiana law, a contractor is entitled to recover the contract price even though defects and omissions are present when he has substantially performed the duties set forth under the contract. *Rice v. Mesa Gen. Contr., L.L.C.*, 08-115 (La.App. 5 Cir. 05/27/08), 986 So.2d 122; *Mayeaux v. McInnis*, 00-1540 (La.App. 1 Cir. 9/28/01), 809 So.2d 310, *writ denied*, 01-3286 (La. 3/8/02), 810 So.2d 1164. This court in *Transier v. Barnes Bldg., LLC*, 14-1256, p. 14 (La.App. 3 Cir. 6/10/15), 166 So.3d 1249, 1260, quoted the following language as to the meaning of "substantial performance:"

5

> Determination of substantial performance is a question of fact about whether the construction is fit for its intended purpose despite deficiencies. Factors that may be considered in determining whether the contractor achieved substantial performance include the extent of the defects or non-performance, the degree to which the purpose of the contract has been impaired, the ease of correction, and the use or benefit to the owner of the work performed.

> *Cascio v. Carpet*, 42,653, pp. 10-11 (La.App. 2 Cir. 10/24/07), 968 So.2d 844, 851 (citation omitted).

"Where the owner presents evidence of the cost of completion of the work or correction of the defective work, the contract price may be reduced by that amount." *Maxwell v. Cayse*, 10-680, p. 4 (La.App. 3 Cir. 12/8/10), 54 So.3d 118, 122, (*quoting Mount Mariah Baptist Church, Inc. v. Pannell's Associated Elec., Inc.*, 36,361, p. 12 (La.App. 2 Cir. 12/20/02), 835 So.2d 880, 888, *writ denied*, 03-555 (La. 5/2/03), 842 So.2d 1101).

The controlling question here is whether the trial court manifestly erred in finding that Direct Tech "substantially performed" the duties set forth under the contract. It is true Danrik was able to sufficiently correct the defects in the pipe to install the cable. These repairs, completed by K-Jon, amounted to slightly less than $5,000.00 and were achieved in a relatively short period of time, such that no penalty was assessed against Danrik by Bellsouth. Further, as the trial court noted Danrik received the full negotiated contract price from Bellsouth.

However, under the law set forth above, the trial court erred in not awarding Danrik a reduction in the contract price by the amount it paid to K-Jon to repair the pipe.

The evidence established Danrik received two invoices from K-Jon in regards to the work performed to open up the pipe. One invoice, which at the date of trial had been paid, amounted to $1,551.25. The second invoice, which had yet to be paid at the time of trial, was for $3,250.00. Thus, the total amount owed to

K-Jon by Danrik is $4,801.25. We find Danrik is entitled to reduce the contract amount owed to Direct Tech by that amount.

Danrik also argues it is entitled to recover expenses for repair attempts it made to make the pipe fit for its intended purpose. For several reasons, we find Danrik is not entitled to these claimed amounts. Danrik maintained it incurred expenses for attempting to drill a bore on two occasions after Direct Tech left the job. The testimony established that Danrik attempted to drill a bore even though it was aware it likely did not have the proper equipment to drill a bore of that length. Not surprisingly, the attempt by Danrik failed. Danrik's second attempt to drill a bore occurred after K-Jon was contacted, had been to the site, and was waiting on additional hosing which it believed (correctly so) would clear the pipe. We find these attempts were unlikely to succeed and not prudent decisions; and thus, were unlikely to "correct" or "complete" the job. Therefore, we decline to reduce the contract amount awarded to Direct Tech by these expenses.

Direct Tech, on the other hand, was unable to sufficiently prove the problems with the pipe resulted from the pipe not being fused correctly, which it alleges allowed sediment to block the pipe. The evidence established that the pipes were fused by a previous subcontractor prior to Direct Tech contracting with Danrik. There was no testimony in the record to indicate any problems existed with the fusing of the pipe. Certainly, personnel for Direct Tech had access to the pipe during the installation process, and voiced no objections or reservations concerning the pipe's fitness for the construction project it agreed to undertake. Further, there was testimony from Casey Crawford, the only expert called at trial, that problems with a fuse breaking typically occur prior to the pipe being placed in the hole. He also testified a waterjet, as was used in the repair process by K-Jon, would typically clear out a pipe that is blocked by debris to its full annular size. However, in this case, the waterjet was only able to clear out the pipe sufficient to

allow the cable to be inserted, but not to its full diameter. This to him would indicate the pipe was not blocked because of any accumulation of sediment from leaking at the fused areas. The assertions that the pipes were not usable because of improper fusing was entirely speculative and not proven.

Direct Tech also alleged the pipes (which were supplied by Bellsouth) were left out in the open at the job site in excess of the twenty-two days the specifications called for to install underground. Counsel for Direct Tech argued ultra violet rays from the pipes being left out in the sun could cause the pipes to become brittle and more susceptible to malfunction. No evidence was presented to validate this argument, nor was there any testimony that the pipes appeared to be brittle during the installation process. Moreover, the evidence does not support the allegation that the pipes had been left outside for over twenty-two days. There was testimony the pipes were delivered to the job site on August 5, 2014. It is uncontroverted that the pipes were installed underground on August 23, 2014. Thus, there is no basis for Direct Tech's allegations that any problems with the pipes may have been caused by being left outdoors in excess of twenty-two days.

The trial court awarded Direct Tech $6,500.00 in attorney fees for the efforts it expended at trial. Direct Tech answered the appeal and requests additional attorney fees. Considering our findings on appeal, we reverse the trial court's award of $6,500.00 to Direct Tech for attorney fees and deny its request for attorney fees on appeal. Direct Tech also, in brief, requests we reverse the portion of the trial court's judgment denying its request for penalties. However, Direct Tech's answer to the appeal only asked for additional attorney fees and did not reference the trial court's denial of penalties; thus, that portion of the judgment is not before us on appeal.

Danrik requests attorney fees pursuant to La.R.S. 9:4833B, which allows for an award of attorney fees against Danrik for cancellation of the lien. However, the

record indicates Danrik failed to send Direct Tech a written request to cancel the lien as required by statute. Therefore, we deny Danrik's request for attorney fees.

Danrik has noted, in brief, the fact that the fused pipe, in its repaired state does not have sufficient diameter to house innerduct. Rick Judice testified that Danrik could "get caught with that one day." However, at this time any potential claim by Bellsouth is wholly speculative, and not ripe for adjudication at this stage of the proceedings. Moreover, any potential third-party claim for contribution or reimbursement by Danrik against Direct Tech is also not ripe for adjudication at this stage.

## DECREE

For the foregoing reasons, the judgment of the trial court awarding Direct Tech the full contract price of $46,000.00 is amended to reduce that amount by $4801.25 for the amount paid by Danrik to K-Jon to partially clear the pipe. The award of attorney fees to Direct Tech is reversed and set aside. Direct Tech's request for attorney fees on appeal is denied. The trial court's denial of penalties is affirmed. All costs of this appeal are assessed equally to the parties.

**AFFIRMED IN PART, AS AMENDED; REVERSED IN PART; AND RENDERED.**

9